NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 240013-U

NO. 4-24-0013

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 10, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | McLean County |
| DEAMONTAE D. PRUITTE, | ) | No. 21CF979 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

_____

JUSTICE VANCIL delivered the judgment of the court.
Justices Steigmann and Lannerd concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The appellate court affirmed defendant's first conviction for unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)), finding the evidence was sufficient to sustain a conviction and the unlawful use of a weapon statute did not violate the second amendment of the United States Constitution (U.S. Const., amend. II), but the court vacated defendant's second conviction for unlawful possession of a weapon under the one-act, one-crime rule, vacated his 2011 conviction for aggravated unlawful use of a weapon (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2010)) pursuant to *People v. Aguilar*, 2013 IL 112116, ¶¶ 20-22, and remanded for resentencing.

¶ 2    After a jury trial, defendant, Deamontae D. Pruitte, was found guilty of four counts

of unlawful possession of a weapon by a felon (UPWF), a Class 2 felony (720 ILCS 5/24-1.1(a)

(West 2020)). The trial court merged count III into count I and merged count IV into count II. It

sentenced defendant to a total of 14 years' imprisonment on the remaining two counts.

¶ 3    Defendant appeals, arguing (1) the evidence was insufficient to sustain his

convictions, (2) the Illinois statute prohibiting UPWF is unconstitutional under the second

amendment of the United States Constitution (U.S. Const., amend. II), (3) his convictions for two separate counts violate the one-act, one-crime rule, (4) the trial court subjected him to an improper double enhancement at sentencing, (5) the court improperly relied on a void *ab initio* conviction for aggravated unlawful use of a weapon (AUUW) to increase his sentence, and (6) the court otherwise abused its discretion at sentencing by imposing a sentence that was manifestly disproportionate to the nature of the offense.

¶ 4        We vacate defendant's conviction for count II, affirm his conviction for count I, and remand for resentencing.

¶ 5                                I. BACKGROUND

¶ 6        On September 22, 2021, the State indicted defendant on four counts of UPWF. The indictment alleged that "on or about the 21st day of August, 2021," defendant "knowingly possessed a [.]380 caliber pistol firearm on or about his person." Count I alleged defendant had previously been convicted of robbery, a felony, in Will County case No. 17-CF-44, and he was on parole or mandatory supervised release (MSR) at the time he possessed the pistol. Count II alleged defendant had previously been convicted of robbery in Will County case No. 17-CF-44. Count III alleged defendant had previously been convicted AUUW in Will County case No. 15-CF-462. Finally, count IV alleged defendant had previously been convicted of AUUW in Will County case No. 11-CF-1956.

¶ 7        Defendant pleaded not guilty, and his jury trial took place in May 2023. Brishia Adams testified she was defendant's ex-fiancée, and he was the father of her two-year-old daughter. In 2021, she lived with him, their daughter, and her son. On August 21, 2021, police officers came to her apartment twice, and she showed them a video on Snapchat. She testified Snapchat is a social media application for uploading pictures and sending messages. She further

testified she had created a Snapchat account in defendant's name, she knew the password, and the account was on her device. On the day of defendant's arrest, she told police the account belonged to defendant. At trial, she testified that this was untrue and that defendant had no access to the account.

¶ 8        Adams testified she allowed the officer to record the Snapchat video, and the recording was admitted into evidence. The recording shows a phone, and the phone is playing a video of defendant holding two handguns, one black and one pink. Adams testified she uploaded the video to the Snapchat account in defendant's name on August 21, 2021, but the video was recorded in 2019. She testified defendant had recorded the video, but she uploaded it. She admitted she did not tell the officer this in August 2021. Instead, she told the officer it was a recent video.

¶ 9        Adams further testified she told the officer about text messages with defendant. She had defendant saved as a contact in her phone under the name "Deamontae." She allowed officers to take pictures of text messages she showed them. The State admitted pictures of those messages into evidence. In the messages, defendant sent Adams a photograph of two handguns, one black and one pink, and magazines sitting on a cushion, and he told her the price of the two guns.

¶ 10        At trial, Adams claimed she had owned two cell phones, and she had given one to defendant, although she denied he used it "regularly." Adams provided two possible e-mail addresses associated with the iPhone account. She did not remember the phone number for the phone that defendant was using. She thought perhaps there was no phone number, only an e-mail account connected to iCloud. Adams testified the phone in defendant's possession was connected to her iCloud account, and the photograph of the guns was taken from that account. At trial, she claimed she took the photograph of the two guns, but she acknowledged that she did not tell police this in August 2021. She testified she needed the picture of the guns on the cushion from her iCloud

account, and defendant sent it to her. She testified she wanted to purchase a gun, she had a valid firearm owners identification card, and defendant was simply telling her the price. She further testified she and defendant were communicating by voice memo in addition to the text messages, and those voice memos were not reflected in the text message conversation.

¶ 11    Adams admitted to the jury that when she spoke to the police, she told the officers defendant was trying to obtain the guns, not her. She explained that she had wanted defendant to leave their shared apartment, and when the officers arrived the first time, they told her she could not compel defendant to leave the apartment if he had not committed any crime. She testified she was "very intoxicated" and "upset." The prosecutor asked whether she remembered telling officers defendant wanted a gun because a few weeks earlier, his brother had shot at him and he had talked about how "retribution is inevitable." She admitted she told the officers that.

¶ 12    Adams denied talking to defendant about the court case, and she denied receiving a message from defendant saying, "I went to court today. They said my whole trial is around your testimony, the cellular device belonging to you, and the iCloud can upload an old [photograph] because it is attached to your phone. Explain all that information." Although she denied receiving that message, she admitted responding to that message, "I already told your brother to relay the message that I was going to make sure I made that very clear to them that it was my phone, an old phone from 2016."

¶ 13    Officer Hunter Clark testified that on August 21, 2021, he responded to two reports at defendant and Adams's apartment. The second time he responded, he met with defendant and Adams, and he arrested defendant. Clark knew defendant had a previous felony conviction and was on parole. Adams had reported defendant was potentially armed, and she had showed Clark messages and pictures on her phone. Clark testified Adams told him the Snapchat video depicted

- 4 -

defendant, and he recorded a video of the video on Adams's phone. Clark testified he took note of defendant's appearance in the video, especially "the style of his hair, the silver necklace, and the white shirt that he had on at the time." Clark further testified that when he observed defendant in person, he had the same clothes, necklace, and hairstyle.

¶ 14　　　　　Clark testified that defendant had a cell phone when he arrested him. Adams had given Clark defendant's phone number. Clark had dispatch call the number she provided, and the phone defendant had rang. Clark testified this was the same phone number associated with the text messages Adams had showed him. After a search warrant was obtained and data extracted from the phone, Clark reviewed the data from the device, including text messages, contacts, videos, and pictures. Some of the images depicted defendant holding two firearms. Clark testified defendant's appearance in one of the photographs was "the same" as when he had seen him on the day of the arrest. He believed another photograph, showing an officer standing next to Adams's car, was taken from the window of the apartment or the stairwell. Clark believed, based on the light in the picture, that the photograph was taken during his first interaction with Adams on the day of defendant's arrest.

¶ 15　　　　　Clark testified, based on his training and experience, that the firearms depicted in the photographs had "all the components of a fully functioning firearm." Defense counsel objected, and the trial court overruled the objection. Clark also testified the data extracted from the device indicated defendant searched on Google Maps for "Darnall's Gun Range," a nearby firing range. On cross-examination, Clark confirmed no guns were located during the investigation, and he acknowledged he had no evidence of who conducted the Internet searches for "Darnall's Gun Range."

¶ 16    Detective Tyrel Klein of the Bloomington Police Department testified as an expert in the field of digital forensic examination. Klein testified he performed an extraction of data from an iPhone 6 he received from Officer Clark in August 2021 related to the investigation of defendant. Klein explained that when he performs a cell phone extraction, he extracts data only from the physical device, not from any iCloud account connected to the phone. He used Cellebrite software to produce a report on the contents of the iPhone, and seven pages from the report were admitted into evidence. In explaining the report, Klein testified an Apple ID that matched one of the e-mail addresses Adams provided was "connected to the device." The phone's name was "Bri's phone." The report contained information on images, videos, and audio files stored on the iPhone, including information on the date the files were created, modified, and accessed. At trial, Klein explained how to properly read the report's time notations.

¶ 17    Klein explained the Cellebrite report included a "Web History" section, indicating there were "five web visits for Google Maps to Darnall's Gun Works & Ranges on August 21st of 2021." Klein also verified certain image files extracted from the iPhone 6, which were admitted into evidence, including photographs of defendant holding a black handgun and a pink handgun. The report indicated one of the photographs of defendant holdings guns was captured on August 21, 2021, at 6:05:16 p.m., and Klein testified the report suggested the photograph was taken using the iPhone 6 from which the data was extracted. The images also included a photograph of two guns and magazines on a cushion that appears identical to the photograph included in the text conversation with Adams. The Cellebrite report indicated that photograph was captured on August 21, 2021, at 3:17:32 p.m. A video file was extracted from the device, and that video was admitted into evidence. The video shows defendant pointing a pink handgun at the camera. Based on the

- 6 -

location data, Klein believed the video "was either created by Snapchat or saved from Snapchat." The report indicated the video was "[c]reated" on August 21, 2021.

¶ 18    Some of the photographs extracted from defendant's phone were included in a text conversation between defendant and Adams, and portions of this conversation were admitted into evidence with the photographs. In the messages, Adams sent defendant pictures of defendant holding the guns, and she told him, "It's that simple if I wanted your stupid a*** locked up."

¶ 19    The parties stipulated that defendant had previously been convicted of a felony offense and that, at the time of the alleged offenses in this case, defendant was on parole or MSR. The State rested. Defendant moved for a directed verdict, and the trial court denied the motion. Defendant presented no evidence.

¶ 20    During jury deliberations, the jury asked, "What is the legal definition of possession?" After discussing with the attorneys, the trial court provided the following response, "You have been given the evidence and the law relating to this case. Please continue your deliberations." Neither side objected, and defense counsel indicated, "That is defense's preference."

¶ 21    The jury found defendant guilty of all four counts. Defendant filed a motion for a judgment of acquittal notwithstanding the verdict or, in the alternative, a motion for a new trial. The trial court denied the motion.

¶ 22    At sentencing, the trial court began by stating, "It's the Court's position that these four counts constitute one act and that three of these four counts will be merging into one count." The State disagreed, arguing the evidence supported two convictions because defendant possessed two firearms. The court accepted the State's argument and merged count III into count I and count IV into count II. The court sentenced defendant on counts I and II.

¶ 23    The State emphasized defendant's criminal history, beginning soon after defendant turned 18 years old with his conviction in Will County case No. 11-CF-1956 for AUUW. The prosecutor observed, "What's notable of the defendant's criminal history is within a 10-year period following his 18th birthday the defendant committed four felony offenses." She also said, "This is not the first time that the defendant has possessed a firearm. This is the third and fourth time that the defendant has been convicted of possessing a firearm." The State recommended a sentence of 13 years' imprisonment.

¶ 24    Defense counsel argued in mitigation that defendant was the father of four children, he was close with his family, and he had a job pending. He was not accused of any use of force or shooting the guns. He was not accused of obstruction of justice or concealment. Defense counsel recommended a sentence of three years' imprisonment, the statutory minimum. Defendant spoke in allocution, and he asked the trial court to consider his "immense perseverance and fortitude" despite difficult and "dangerous" circumstances, and he asked the court to be lenient.

¶ 25    The trial court found "very little evidence in mitigation," but it noted defendant had children, was raised "in unfortunate circumstances," and used cannabis frequently beginning at a young age. The court found, "That daily cannabis use at that age probably affects the development of the brain, and so the Court is going to consider that a factor in mitigation."

¶ 26    The trial court then discussed defendant's criminal history. It explained:

> "The Court believes that when you look at the presentence report, the defendant's prior criminal record started in 2011 with an [AUUW]. He was sent to prison for that first offense, which is very unusual. He was paroled and returned on a violation, paroled again and then discharged. He quickly picked up the driving while license revoked and a criminal trespass to land, both misdemeanors. He

- 8 -

then—he then picked up, pretty quickly after his final discharge from parole, another [AUUW]. The first one in the vehicle, the second one on his person. Was sent back to prison for three years. He was paroled and discharged—paroled, violated, returned and paroled again and then discharged.

He, during that parole period of time, committed the offense of robbery, another very serious felony offense and was sentenced to three years in the Department of Corrections, paroled, returned on a violation, that violation being another felony offense of aggravated fleeing or eluding police. He was ultimately sent to prison for two years for that offense, and then, while on parole for that, picked up this unlawful use of weapons. So there hasn't been a break, and there really hasn't been a reduction in the seriousness of the offenses. Each of these offenses puts the public at serious risk of collateral damage."

¶ 27    The trial court concluded it saw "very little evidence in mitigation," but considering all the evidence in mitigation and aggravation, the "evidence in aggravation substantially outweighs the mitigation," so the court sentenced defendant to 14 years' imprisonment.

¶ 28    This appeal followed.

¶ 29                    II. ANALYSIS

¶ 30    Defendant challenges his convictions and his sentence. He first asks us to vacate his convictions, arguing that the Illinois statute prohibiting UPWF is unconstitutional under the second amendment of the United States Constitution and that the State failed to prove he committed the offenses. At the very least, he argues, the one-act, one-crime rule requires us to vacate one of his two convictions. If we uphold at least one of defendant's convictions, he challenges his 14-year prison sentence, arguing the trial court subjected him to an illegal double

enhancement, improperly relied on a void *ab initio* conviction to increase his sentence, and imposed a sentence that was manifestly disproportionate to the nature of the offense.

¶ 31                                        A. Second Amendment

¶ 32         We address defendant's second amendment argument first. The jury found defendant guilty of UPWF, in violation of section 24-1.1(a) of the Criminal Code of 2012 (Code) (720 ILCS 5/24-1.1(a) (West 2020)). Defendant argues section 24-1.1(a) is facially unconstitutional under the second and fourteenth amendments of the United States Constitution (U.S. Const., amends. II, XIV) and the United States Supreme Court's decision in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022). The constitutionality of a statute is a question of law, which we review *de novo*. *People v. Burns*, 2024 IL App (4th) 230428, ¶ 10. Because defendant raises a facial challenge, not an as-applied challenge, he must show the statute is unconstitutional under any set of facts. *Id.* ¶ 11.

¶ 33         The second amendment provides, "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const., amend. II. This amendment confers an individual right to keep and bear arms (*District of Columbia v. Heller*, 554 U.S. 570, 595 (2008)), and it applies to the states through the due process clause of the fourteenth amendment (U.S. Const., amend. XIV; *McDonald v. City of Chicago*, 561 U.S. 742, 791 (2010)). In *Bruen*, the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 17. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.' " *Id.* (quoting *Konigsberg v. State Bar of California*, 366 U.S. 36, 50 n.10 (1961)).

¶ 34    We have already upheld section 24-1.1(a) against a second amendment challenge. In *Burns*, we found the second amendment protects the right of "law-abiding citizens" to possess firearms, agreeing with the First District's decision in *People v. Baker*, 2023 IL App (1st) 220328, ¶ 37. *Burns*, 2024 IL App (4th) 230428, ¶¶ 18-21; see *Bruen*, 597 U.S. at 71. We rejected the defendant's efforts to extend *Bruen* and *Heller* beyond this limit. *Burns*, 2024 IL App (4th) 230428, ¶ 19 (citing *Heller*, 554 U.S. at 595, 635); see *People v. Boyce*, 2023 IL App (4th) 221113-U, ¶ 16. Because the defendant in *Burns* had a previous felony conviction, we found, "*Bruen* simply does not apply to defendant" (*Burns*, 2024 IL App (4th) 230428, ¶ 21), and we concluded the regulation of possession of firearms by felons in section 24-1.1(a) does not violate the second amendment. *Id.* The same reasoning applies here. Defendant's previous convictions include robbery, a felony, so *Bruen* does not apply to him.

¶ 35    Defendant asks us to reconsider our decision in *Burns*. He cites *United States v. Freeman*, 701 F. Supp. 3d 716 (N.D. Ill. 2023), *Range v. Attorney General United States of America*, 69 F. 4th 96, 101-02 (3rd Cir. 2023), and *United States v. Prince*, 700 F. Supp. 3d 663, 668-69 (N.D. Ill. 2023), as persuasive authorities. He also acknowledges the Supreme Court's decision in *United States v. Rahimi*, 602 U.S. ___, 144 S. Ct. 1889 (2024), noting that *Rahimi* did not decide whether the second amendment's protections apply to felons.

¶ 36    We decline defendant's invitation to reconsider *Burns*. *Rahimi* did not directly address the question before us, but the Supreme Court approvingly cited its statement in *Heller* that prohibitions on the possession of firearms by " 'felons and the mentally ill' are 'presumptively lawful.' " *Id.* at ___, 144 S. Ct. at 1902 (quoting *Heller*, 554 U.S. at 626, 627 n.26); see *People v. Gardner* 2024 IL App (4th) 230443, ¶ 68. Moreover, many Illinois courts have agreed with *Burns*'s conclusion, rejecting second amendment challenges to section 24-1.1(a). See *People v.*

*Martin*, 2024 IL App (1st) 221562-U, ¶ 83; *Gardner*, 2024 IL App (4th) 230443, ¶ 68; *Baker*, 2023 IL App (1st) 220328, ¶ 37; *Boyce*, 2023 IL App (4th) 221113-U, ¶ 16; *People v. Carldwell*, 2024 IL App (1st) 230968, ¶ 21; *People v. Wright*, 2024 IL App (1st) 230428-U, ¶¶ 15-16; *People v. Gross*, 2024 IL App (2d) 230017-U, ¶¶ 23-24, 29; *People v. Echols*, 2024 IL App (2d) 220281-U, ¶¶ 152-53, 158; *People v. Travis*, 2024 IL App (3d) 230113, ¶¶ 32-33; *People v. Sherrod*, 2024 IL App (3d) 230275, ¶¶ 9-10; *People v. Martinez*, 2024 IL App (2d) 230305-U, ¶ 49. Other Illinois courts have agreed that *Bruen* did not invalidate regulations on the possession of firearms by felons. *People v. Thomas*, 2024 IL App (4th) 240315-U, ¶ 23; *People v. McNeal*, 2024 IL App (1st) 231051-U, ¶¶ 20-23; *People v. Kelley*, 2024 IL App (1st) 230569, ¶¶ 16-17, 22; *People v. Brooks*, 2023 IL App (1st) 200435, ¶¶ 100, 105. We decline defendant's invitation to reconsider *Burns*'s well-supported holding, so we deny defendant's request that we find section 24-1.1(a) unconstitutional.

¶ 37                     B. Sufficiency of the Evidence

¶ 38          Defendant next contends the State did not introduce sufficient evidence to prove him guilty beyond a reasonable doubt. "The due process clause of the fourteenth amendment to the United States Constitution requires that a person may not be convicted in state court 'except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *In re Winship*, 397 U.S. 358, 364 (1970)). The task of the reviewing court is to determine, "considering the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the essential elements met beyond a reasonable doubt." *People v. Swenson*, 2020 IL 124688, ¶ 35. "Under this standard, a reviewing court will not substitute its judgment for that of the trier of fact on issues of the weight of evidence or the credibility of witnesses." *People v. Phelps*, 211 Ill. 2d

- 12 -

1, 7 (2004). Instead, "it is the responsibility of the trier of fact to 'fairly *** resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.' " *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

¶ 39        Defendant argues the State did not introduce sufficient evidence to prove he possessed any firearms. Police did not find any firearms on defendant's person. Indeed, they recovered no firearms at all. At trial, Adams testified that she took the photograph of the guns on the cushion, not defendant, and that the video of defendant holding the guns was recorded in 2019, not 2021. Because the State alleged defendant possessed the guns on August 21, 2021, defendant argues the evidence was insufficient to convict him. Defendant further claims the evidence recovered from the iPhone 6 in his possession supports Adams's statements at trial that the phone was hers and the video was from 2019. The phone was named "Bri's iPhone," and Adams provided the e-mail address associated with the phone's Apple account.

¶ 40        We find the photographs and videos of defendant holding the guns sufficiently prove defendant possessed the guns. No evidence suggested the photographs and videos were altered. No evidence refuted that defendant was the man they depicted. Adams's testimony established she showed Officer Clark the picture and video precisely to prove defendant unlawfully possessed firearms.

¶ 41        Regarding the date of the photographs and videos, whether the phone in defendant's possession was named "Bri's phone" and registered to Adams's e-mail address has no bearing on when the pictures and videos were captured. Moreover, sufficient evidence was introduced for the jury to conclude defendant possessed the guns on the day he was arrested. Officer Clark recovered an iPhone 6 from defendant during his arrest, and Detective Klein analyzed the phone's contents. The resulting Cellebrite report and Detective Klein's testimony indicated that one photograph of

defendant holding the two guns was captured on August 21, 2021, at "6:05:16 PM." Indeed, the report indicates all the photographs depicting the handguns and the video recovered from the iPhone were captured on August 21, 2021. Detective Klein, who was qualified as an expert witness without objection, explained the report to the jury, and no evidence was introduced to challenge his understanding of the data and the report.

¶ 42            In response to the Cellebrite report's indication that the photographs were taken on August 21, 2021, defendant relies on Adams's testimony and text messages recovered from his phone. Adams testified that she took the photograph of the firearms on the cushion and that she lied to Officer Clark because she wanted defendant to be arrested. The record also includes a text message conversation between Adams and defendant, recovered from the phone in defendant's possession. Adams sent defendant some of the pictures of him holding the guns, along with the statement, "It's that simple if I wanted your stupid a*** locked up." Defendant contends that on August 21, 2021, Adams took screenshots of pictures from 2019, and she sent him those screenshots. He argues that the date and time in the Cellebrite report reflects the date and time Adams took screenshots of the older photographs, rather than the date and time those original photographs, depicting defendant holding the guns, were captured.

¶ 43            We find at least four reasons defendant's argument fails. First, Adams never testified she took screenshots of photographs from 2019. She testified the video posted on Snapchat was recorded in 2019, and she testified she took the picture of the guns on the cushion. But, at trial, she did not discuss any of the photographs of defendant holding the guns that were recovered from the phone in defendant's possession, including those photographs that accompanied her message to defendant indicating she could have defendant arrested. She certainly did not testify that she took screenshots of pictures from 2019 and sent those screenshots to defendant. Second,

the jury could have concluded Adams's elaborate account of fabricating evidence and lying to police was not credible, and, on review, we defer to the trier of fact's findings on the credibility of witnesses. See *Id.* Third, someone used the phone defendant carried with him to search on Google Maps for "Darnall's Gun Works & Ranges," a nearby firing range, five times. Defendant's version of events would require this to be simply a coincidence. We are not persuaded. Finally, Officer Clark testified that he closely observed defendant's appearance in the pictures, including his shirt, hairstyle, and necklace, and that defendant had the same shirt, necklace, and hairstyle that day when Clark arrested him. Viewing all this evidence in the light most favorable to the prosecution (*Swenson*, 2020 IL 124688, ¶ 35), and leaving to the jury the responsibility to weigh the evidence and draw reasonable inferences (*Phelps*, 211 Ill. 2d at 7), we find the evidence was sufficient for the jury to conclude defendant possessed two firearms on August 21, 2021.

¶ 44 Finally, defendant argues the jury's question, "What is the legal definition of possession?" demonstrates the State's case was inadequate. Defendant contends this question shows the jury doubted the photographs, videos, and metadata evidence sufficiently demonstrated he possessed the guns. We disagree. Defendant's inference simply does not follow from the question the jury asked, which said nothing about the value of iPhone images or metadata. More importantly, we will not speculate on the content of the jurors' minds when they later returned a unanimous guilty verdict. The evidence at trial adequately supported that verdict, so we reject defendant's sufficiency-of-the-evidence argument.

¶ 45 C. One-Act, One-Crime

¶ 46 Defendant next asks us to vacate one of his convictions under the one-act, one-crime rule. "Under that rule, a defendant may not be convicted of multiple offenses based on the same physical act." *People v. Almond*, 2015 IL 113817, ¶ 47 (citing *People v. King*, 66 Ill. 2d 551,

566 (1977)). An "act" is "any overt or outward manifestation which will support a different offense." (Internal quotation marks omitted.) *People v. Rodriguez*, 169 Ill. 2d 183, 188 (1996). Application of the one-act, one-crime rule is a question of law, which we review *de novo*. *Almond*, 2015 IL 113817, ¶ 47. Defendant admits he forfeited this argument by failing to file a postsentencing motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Nevertheless, the plain error rule provides an exception to forfeiture when either:

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

See Ill. S. Ct. R. 615 (eff. Jan. 1, 1967). Violations of the one-act, one-crime rule are reversible as second-prong plain error. *People v. Coats*, 2018 IL 121926, ¶ 10.

¶ 47 Defendant was charged with and convicted of four counts of UPWF. At sentencing, the trial court initially commented all four counts should be merged into one under the one-act, one-crime rule. But the State objected that defendant possessed two guns, and those two guns supported two convictions. The court agreed, so it merged count III into count I and merged count IV into count II. The court then sentenced defendant on counts I and II.

¶ 48 On appeal, defendant acknowledges that possession of two firearms could support two separate convictions in some cases, but he claims the indictment did not indicate the State intended to treat his conduct as multiple acts, and only one conviction should remain. He relies on

*People v. Crespo*, 203 Ill. 2d 335, 345 (2001), *People v. Beltran*, 327 Ill. App. 3d 685, 693 (2002), and *People v. Green*, 339 Ill. App. 3d 443, 459 (2003).

¶ 49        In *Crespo*, the State charged the defendant with multiple crimes after he stabbed and killed the mother of his child and stabbed her daughter three times. *Crespo*, 203 Ill. 2d at 338-39. After a jury trial, the defendant was found guilty of first degree murder, armed violence, aggravated battery based on great bodily harm, and aggravated battery based on a deadly weapon. On appeal, the defendant argued his convictions for armed violence and the aggravated batteries were based on the same physical act—stabbing the daughter three times—so only one of the convictions should stand. *Id.* at 340. The supreme court agreed. Although each stabbing could have supported a separate conviction, the indictment did not differentiate the stab wounds, and it did not "apportion these offenses among the various stab wounds." *Id.* at 343. Instead, the different counts charged the defendant "with the same conduct under different theories of criminal culpability." *Id.* at 342.

¶ 50        In *Beltran*, the defendant fired gunshots at three victims. *Beltran*, 327 Ill. App. 3d at 688, 693. The State charged him with one count of attempted first degree murder and one count of aggravated discharge of a firearm for each victim. *Id.* at 687, 693. The jury found the defendant guilty, and on appeal, he sought to vacate his convictions for aggravated discharge of a firearm based on the one-act, one-crime rule. The State conceded error, and the appellate court agreed, explaining, "as to each victim, the indictment did not specify which shots supported which charge. Similarly, at trial, the State did not distinguish among the shots. Thus, against each victim, defendant committed a single act that supported only a single conviction." *Id.* at 693. The court vacated the convictions for aggravated discharge of a firearm. *Id.*

¶ 51　　　　Finally, in *Green*, the defendant fired four or five gunshots out of his car window at police officers. *Green*, 339 Ill. App. 3d at 447. He was convicted of two counts of attempted first degree murder and one count of aggravated discharge of a firearm. *Id.* at 446. The appellate court reversed defendant's conviction for aggravated discharge of a firearm. The court explained that the defendant fired multiple shots, but the State failed to "apportion those shots in its charging instrument so that each formed the basis for separate crimes. Rather, the information relies on the fact that [the defendant] 'discharged a firearm,' without separation of the shots fired, to support the charges of both aggravated discharge of a firearm and attempt (murder)." *Id.* at 459.

¶ 52　　　　Defendant argues the reasoning from *Crespo*, *Beltran*, and *Green* also applies here. The indictment alleged defendant "possessed a [.]380 caliber pistol firearm" four separate times. None of the counts provided any additional details to distinguish the two guns defendant possessed. Defendant contends the State could have specified which firearm provided the basis for each charge by, for example, specifying one of the guns had a pink handle. But the State failed to do so. Instead, the allegations supporting each count differed only in the underlying felony or elevating factor. Therefore, defendant argues the State alleged only one act, and only one conviction can stand.

¶ 53　　　　The State responds that it consistently alleged defendant possessed two firearms. Its discovery disclosures indicated defendant possessed two firearms, as did the evidence at trial. At closing argument, the State argued defendant possessed two firearms. The State insists it proved defendant committed two acts that support two convictions.

¶ 54　　　　The State does not respond to defendant's citations to *Crespo*, *Beltran*, and *Green*, and we find those cases decisive. The State could have charged defendant with possession of two separate firearms, but the indictment did not differentiate the firearms in any way. The State

- 18 -

alleged simply that defendant "possessed a [.]380 caliber pistol firearm," and it alleged different underlying felonies or legal theories to support that core allegation. We see no basis to distinguish this case from the cases defendant cited. We find defendant's two convictions violate the one-act, one-crime rule, and we vacate defendant's conviction and sentence under count II.

¶ 55        Defendant argues the one-act, one-crime rule requires not only that we vacate one of his convictions, but also that we remand for resentencing. Citing *People v. Lopez*, 147 Ill. App. 3d 127 (1986), he argues that if it is unclear whether the trial court relied on the vacated conviction at sentencing, the appellate court should remand for resentencing. As explained below, we remand for resentencing on other grounds, so we need not reach this question.

¶ 56                                D. Sentencing

¶ 57        Defendant contends the trial court committed errors at sentencing that warrant resentencing. Generally, "[t]he trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). On review, we will uphold the trial court's sentence unless the court abused its discretion. *Id.* "[A] sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 58                              1. *Double Enhancement*

¶ 59        Defendant first argues the trial court improperly considered his prior felony convictions as an aggravating factor at sentencing even though those convictions already elevated his offenses to Class 2 felonies. "Generally, a factor implicit in the offense for which the defendant has been convicted cannot be used as an aggravating factor in sentencing for that offense." *Phelps*,

211 Ill. at 11. "Such dual use of a single factor is often referred to as a 'double enhancement.' " *Id.* at 12. This "occurs when either (1) a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed, or (2) the same factor is used twice to elevate the severity of the offense itself." *People v. Guevara*, 216 Ill. 2d 533, 545 (2005). Our review is *de novo*. *Phelps*, 211 Ill. 2d at 11.

¶ 60　　　　Defendant recognizes he forfeited this argument, so he asks us to review for second-prong plain error. See Ill. S. Ct. R. 615(a) (eff. Jan. 1, 1967). "The first step in any plain-error analysis is to determine whether a clear, obvious, or plain error has been committed." *People v. Mitok*, 2018 IL App (3d) 160743, ¶ 8. If a clear or obvious error occurred at sentencing, "an error is reversible under the second prong where that error 'was so egregious as to deny the defendant a fair sentencing hearing.' " *Id.* (quoting *People v. Hillier*, 237 Ill. 2d 539, 545 (2010)).

¶ 61　　　　Under section 24-1.1(e) of the Code, UPWF is generally a Class 3 felony. 720 ILCS 5/24-1.1(e) (West 2020). A defendant's prior conviction for certain offenses or a defendant's being on MSR at the time of the offense can elevate it to a Class 2 felony. *Id.* Here, count I alleged defendant was on MSR for a prior robbery conviction, resulting in a Class 2 felony. Count II relied on the prior robbery conviction itself to elevate the offense to a Class 2 felony. Count III relied on defendant's 2015 conviction for AUUW, and count IV relied on defendant's 2011 conviction for AUUW (which we find void *ab initio* below). After applying the one-act, one-crime rule, the trial court sentenced defendant only for count I and count II.

¶ 62　　　　Defendant acknowledges the same prior conviction could provide the underlying felony for his offense, UPWF, and elevate that offense to a Class 2 felony. See *People v. Easley*, 2014 IL 115581, ¶¶ 27-28, 30. However, he argues the trial court also increased his sentence based on that prior conviction. At sentencing, the court relied on defendant's criminal history, including

his prior convictions for robbery and AUUW. The court did not discuss other factors related to the nature and circumstances of the offense, and the court did not focus on other aggravating or mitigating factors. The court then imposed the statutory maximum punishment, 14 years' imprisonment. See 720 ILCS 5/24-1.1(e) (West 2020). Defendant contends the court increased his sentence because of the same prior conviction that enhanced his offense to a Class 2 felony, subjecting him to an improper double enhancement.

¶ 63    We find no error. It is undeniable the court could consider at least those convictions other than the felony conviction used to enhance defendant's offense. See 730 ILCS 5/5-5-3.2 (West 2022) (listing reasons for a court to increase a defendant's sentence, including that "the defendant has a history of prior delinquency or criminal activity"). Those additional offenses included driving while license revoked, criminal trespass to land, and aggravated fleeing or eluding police.

¶ 64    More importantly, the trial court referred to defendant's robbery conviction only while reviewing the entire timeline of defendant's criminal history. The court narrated defendant's continuous pattern of violating his parole, committing new offenses while on parole, or committing new offenses very soon after his discharge from parole. The court concluded, "So there hasn't been a break, and there really hasn't been a reduction in the seriousness of the offenses." In recounting this narrative, we do not believe the court was required to skip over defendant's robbery conviction. Considering this context, we find the court did not increase defendant's sentence because of his prior conviction for robbery itself, but rather because of the frequency of his criminal behavior, failure to adhere to the terms of his parole, and incessant threats of collateral harm to the public. We find no double enhancement, so we find no error.

¶ 65                    2. *AUUW*

¶ 66    While discussing defendant's prior convictions, the trial court referenced his 2011 conviction for AUUW. That conviction was based on section 24-1.6(a)(1), (a)(3)(A) of the Code (720 ILCS 5/24-1.6(a)(1), (a)(3)(A) (West 2010)). In *People v. Aguilar*, 2013 IL 112116, ¶¶ 20-22, and *People v. Burns*, 2015 IL 117387, ¶¶ 22-25, the supreme court found this provision unconstitutional on its face. Defendant claims this conviction is void *ab initio*, and the trial court erroneously relied on it at sentencing.

¶ 67    A void *ab initio* conviction may be "impeached at any time in any proceeding whenever a right is asserted by reason of that judgment, and it is immaterial, in a consideration of the validity of the judgment, whether or not the time for review by appeal has expired." (Internal quotation marks omitted.) *In re N.G.*, 2018 IL 121939, ¶ 56 (quoting *People v. Meyerowitz*, 61 Ill. 2d 200, 206 (1975), quoting *Reynolds v. Burns*, 20 Ill. 2d 179, 192 (1960)). "Indeed, if the constitutional infirmity is put in issue during a proceeding that is pending before a court, the court has an independent duty to vacate the void judgment and may do so *sua sponte*." *Id.* ¶ 57.

¶ 68    Here, the State concedes defendant's AUUW conviction in Will County case No. 11-CF-1956 was void *ab initio*. We take judicial notice of the judgment order entered in that case, which confirms defendant was convicted under section 24-1.6(a)(1), (a)(3)(A). See 720 ILCS 5/24-1.6(a)(1), (a)(3)(A); see also Ill. R. Evid. 201(d), (f) (eff. Jan. 1, 2011); *People v. Davis*, 65 Ill. 2d 157, 164-66 (1976). We agree the conviction was void *ab initio* under *Aguilar* and *Burns*. We vacate that conviction, and we direct the trial court to enter an order vacating defendant's conviction in Will County case No. 11-CF-1956.

¶ 69    Defendant argues the trial court's reliance on his void 2011 conviction at sentencing requires resentencing. He asserts that in imposing the maximum sentence possible, the court focused on defendant's criminal history, and the court might have imposed a lower sentence if it

had recognized his 2011 conviction was void. He relies on *People v. Smith*, 2016 IL App (2d) 130997, and *People v. Cross*, 2019 IL App (1st) 162108.

¶ 70    In *Smith*, the defendant was convicted of armed robbery with a firearm. *Smith*, 2016 IL App (2d) 130997, ¶ 1. The defendant had multiple prior convictions, including a void *ab initio* conviction for AUUW. *Id.* ¶ 5. When sentencing the defendant to 20 years' imprisonment, plus a mandatory 15-year firearm enhancement, the trial court indicated the defendant's criminal history was "certainly a factor in aggravation," including the AUUW conviction. (Internal quotation marks omitted.) *Id.* ¶ 9. On appeal, the defendant argued the trial court's reliance on a void *ab initio* conviction necessitated resentencing. *Id.* ¶ 11. The appellate court agreed, explaining, "[W]e cannot say that the weight that the judge placed on defendant's AUUW conviction was so insignificant that it did not affect the sentence" *Id.* ¶ 18.

¶ 71    In *Cross*, the defendant was convicted of aggravated criminal sexual assault, aggravated kidnapping, attempted sexual assault, attempted criminal sexual abuse, and aggravated criminal sexual abuse. *Cross*, 2019 IL App (1st) 162108, ¶ 1. At sentencing, the State discussed the defendant's criminal record, including a prior conviction for AUUW and a conviction for unlawful use of a weapon by a felon (UUWF), which relied on the AUUW conviction. *Id.* ¶¶ 187, 197. The State also introduced evidence showing the defendant was "a serial rapist." *Id.* ¶ 201. When sentencing the defendant to 70 years' imprisonment, the trial court referred to the defendant's "extensive criminal background." (Internal quotation marks omitted.) *Id.* ¶ 199. The appellate court found defendant's AUUW and UUWF convictions were void *ab initio*, so it vacated those convictions. *Id.* ¶ 187. It also ordered resentencing because the State mentioned the void convictions at sentencing. *Id.* ¶ 202.

¶ 72    The State insists resentencing is unwarranted. It relies on *People v. Matthews*, 2022 IL App (4th) 210752. There, the defendant petitioned for postconviction relief, challenging his convictions and sentences for being an armed habitual criminal and aggravated discharge of a firearm. *Id.* ¶ 1. We found his conviction for being an armed habitual criminal depended on prior void *ab initio* convictions, so we vacated that conviction and sentence. *Id.* ¶¶ 49-51. Nevertheless, we rejected the defendant's demand for resentencing on his aggravated discharge of a firearm conviction. *Id.* ¶ 59. Even though the trial court erroneously considered void prior convictions at sentencing, the "erroneous consideration of such evidence does not render a sentence void." *Id.* ¶ 56. The State asks us to uphold defendant's sentence here based on *Matthews*.

¶ 73    We agree with defendant. First, *Matthews* is inapplicable. There, the defendant's challenge to his sentence did not arise on direct appeal. The defendant did not even raise this argument in his petition for postconviction relief. Instead, he raised this argument for this first time when appealing the dismissal of his petition. *Id.* ¶ 54. The defendant forfeited his sentencing argument, so we could grant the defendant his requested relief only if his sentence was void, not merely erroneous. *Id.* In this context, we concluded merely that consideration of void convictions at sentencing does not render a sentence void and, therefore, subject to collateral attack at any time. See *id.* ¶ 57 (noting that although *People v. Alexander*, 2019 IL App 170168, ¶ 40, and *Cross*, 2019 IL App (1st) 162108, ¶¶ 189-202 "support the proposition that consideration of a void conviction during sentencing is *erroneous*, neither case held that such an error renders the sentence *void*." (Emphases in original)). Here, defendant does not claim that his sentence was void, only erroneous, so *Matthews* is irrelevant.

¶ 74    This case is more comparable to *Smith* and *Cross*. In *Cross*, the State's discussion of the defendant's void convictions at sentencing prompted the appellate court to remand for

resentencing, even though the trial court itself did not directly refer to those convictions. *Cross*, 2019 IL App (1st) 162108, ¶¶ 199-200. Here, the trial court explicitly referenced defendant's void conviction. As in *Smith*, "[W]e cannot say that the weight that the judge placed on defendant's AUUW conviction was so insignificant that it did not affect the sentence," so we remand for resentencing. *Smith*, 2016 IL App (2d) 130997, ¶ 18.

¶ 75                                3. *Manifestly Disproportionate*

¶ 76        Defendant also argues his sentence was manifestly disproportionate to the nature of his offense. He contends the trial court failed to adequately consider the nature and circumstances of the offense, the severity of the offense, and the lack of harm his offense caused. We already have found defendant should be resentenced, so we need not address this argument.

¶ 77                                III. CONCLUSION

¶ 78        For the reasons stated, we affirm defendant's conviction for count I, but we remand for resentencing. We vacate defendant's conviction for count II. We also vacate defendant's conviction for AUUW in Will County case No. 11-CF-1956, and we direct the trial court to enter an order in that case vacating defendant's conviction

¶ 79        Affirmed in part and vacated in part; cause remanded with directions.