NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in the
limited circumstances
allowed under Rule 23(e)(1).

2026 IL App (4th) 250908-U

NO. 4-25-0908

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
June 16, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| DEAMONTAE D. PRUITTE, | ) | No. 21CF979 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | William A. Yoder, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Presiding Justice Steigmann and Justice Lannerd concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court affirmed defendant's 14-year prison sentence for unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2020)), finding the trial court did not consider a factor inherent in the offense at sentencing and did not abuse its discretion in sentencing defendant to the maximum allowable sentence.

¶ 2   On remand for resentencing, the trial court sentenced defendant, Deamontae D. Pruitte, to 14 years in prison on one count of unlawful possession of a weapon by a felon (UPWF), a Class 2 felony (720 ILCS 5/24-1.1(a) (West 2020)).

¶ 3   Defendant appeals, arguing the trial court erroneously considered the general risks of firearms as an aggravating factor and, in doing so, improperly considered a harm inherent in the offense. Defendant further argues the court abused its discretion in sentencing him to the maximum allowable sentence.

¶ 4   We affirm.

¶ 5                                    I. BACKGROUND

¶ 6            In May 2023, defendant was tried on four counts of UPWF. The key witness at trial was Brishia Adams, defendant's ex-fiancée. She testified that on August 21, 2021, she showed police officers a video on a Snapchat account she had created in defendant's name. Adams told the officers the account was defendant's, but, at trial, she admitted that this was not true. She allowed an officer to record the video, which depicted defendant holding two handguns. The recording was admitted into evidence. Adams testified she recorded the video in 2019, but she admitted that in August 2021, she told the police officers that it was a recent recording. Adams also showed officers text messages defendant had sent her. The messages, which were admitted into evidence, showed two handguns and magazines.

¶ 7            The prosecutor asked Adams, "[D]o you recall the officer asking, have any idea why [defendant] is trying to get a hold of some firearms? Do you remember the officer asking you that?" She answered, "No." The prosecutor then asked,

>               "Do you remember telling the officer yes, actually, I do, because him and
>               his twin brother, they got into a situation two weeks ago. His twin brother shot at
>               him so he was—has been on this angry binge for like the last two weeks about how
>               he shot at him and how retribution is inevitable in all of that.
>
>               That is in the text messages. Do you remember that conversation, or do you
>               remember saying that to the officer?"

Adams answered, "I remember saying that." On cross-examination, Adams admitted that she had spoken to police that day because she wanted defendant removed from her home.

¶ 8            Officer Hunter Clark testified that he met Adams at her apartment in August 2021. Adams showed him the messages and pictures on her phone, as well as the Snapchat video, which

Officer Clark recorded. When Clark arrested defendant, defendant had a cell phone in his possession. Police searched the cell phone and recovered a picture of defendant holding two firearms. On cross-examination, Clark admitted that police did not recover any firearms during the investigation.

¶ 9 Defendant and the State stipulated that defendant had a prior felony conviction and was on parole or mandatory supervised release at the time of the alleged offense. Defendant introduced no other evidence.

¶ 10 The jury found defendant guilty of all four counts. At sentencing, the trial court merged the four counts into two counts. The State highlighted defendant's criminal history, beginning with a 2011 conviction for aggravated unlawful use of a weapon (AUUW). In sentencing defendant to 14 years in prison, the court discussed both the 2011 AUUW conviction and a 2017 conviction for robbery.

¶ 11 Defendant appealed. See *People v. Pruitte*, 2024 IL App (4th) 240013-U. He argued that the State failed to prove him guilty beyond a reasonable doubt; the Illinois UPWF statute violated the second amendment of the United States Constitution (U.S. Const., amend. II); his convictions violated the one-act, one-crime rule; the trial court improperly increased his sentence based on the same robbery conviction that elevated his offense to a Class 2 felony; the court improperly relied on a void *ab initio* AUUW conviction at sentencing; and the court abused its discretion at sentencing. *Id.* ¶ 2.

¶ 12 We rejected the defendant's sufficiency-of-the-evidence claim. *Id.* ¶¶ 37-44. We also found that his convictions for UPWF did not violate the second amendment, and the trial court did not err by discussing the robbery conviction that elevated his sentence to a Class 2 felony at sentencing. *Id.* ¶¶ 31-36, 58-64.

¶ 13        However, we agreed with defendant that his two convictions violated the one-act, one-crime rule. Although the evidence at trial showed defendant possessed two firearms, the State failed to apportion the firearms among the different charges. Relying on *People v. Crespo*, 203 Ill. 2d 335 (2001), we found that one of defendant's two convictions should be vacated. We also found that defendant's 2011 conviction for AUUW was void *ab initio*, pursuant to *People v. Aguilar*, 2013 IL 112116, ¶¶ 20-22, and *People v. Burns*, 2015 IL 117387, ¶¶ 22-25. *Pruitte*, 2024 IL App (4th) 240013-U, ¶ 68. Finally, because the trial court erroneously considered the void 2011 conviction at sentencing, we found that resentencing was required. *Id.* ¶¶ 69-74.

¶ 14        Ultimately, we vacated one of defendant's convictions for UPWF but affirmed the other. We also vacated defendant's 2011 AUUW conviction. Finally, we remanded for resentencing. *Id.* ¶ 78.

¶ 15        In July 2025, following defendant's appeal, an updated presentence investigation report was filed for defendant. That report detailed defendant's prior convictions. In 2013, defendant was convicted of driving on a revoked license and criminal trespass to land. In 2015, he was convicted of AUUW and sentenced to three years in prison. After his release, he violated his parole. In 2017, he was convicted of robbery. He was sentenced to three years in prison, paroled, and violated his parole. In 2019, he was convicted of aggravating fleeing. He was sentenced to two years in prison. He was released on parole and violated that parole twice. In 2020, he was convicted of resisting a peace officer, and in 2022, he was convicted of battery.

¶ 16        The report further stated that in January 2023, defendant violated rules at the McLean County Detention Facility (MCDF) against theft, interference with facility personnel, misuse of appliances, and making false statements by "using another inmate's account information on the MCDF-issued tablet." In March 2023, he violated MCDF rules against disobeying

reasonable orders and "unnecessary talking on headcount position or procedure."

¶ 17 Defendant's full presentence investigation report added that he was transferred to Jacksonville Correctional Center, where he participated in adult basic education classes and "Inside Out Dads." He worked in "dietary" and had no disciplinary reports during his residence at Jacksonville Correctional Center. Defendant reported that he used cannabis daily from ages 13 to 21.

¶ 18 Jami Hays, the mother of one of defendant's children, submitted a character reference letter, stating that her father had an employment opportunity available for defendant at his construction business after defendant's release from prison. She also stated that defendant's family was relying on him for financial support and as a caregiver. Defendant's brother submitted another letter, offering defendant employment.

¶ 19 Defendant's resentencing took place on July 8, 2025. The trial court merged the two counts of UPWF into one. The court also acknowledged that the 2011 AUUW conviction had been vacated.

¶ 20 The State argued that multiple aggravating factors were present. The State reviewed defendant's criminal history, highlighting defendant's failure to satisfactorily complete multiple community-based sentences and noting that he committed the UPWF offense at issue here while he was on parole for a previous offense. The State also referred to defendant's violations at the MCDF. The State recommended a sentence of 13 years in prison.

¶ 21 Defense counsel argued that defendant's age was a mitigating factor, stating he was 31 at the time of sentencing and almost 28 when he committed this offense. She noted defendant entered foster care at age 13, and he was "exposed to violence by his mother in the home at an early age." Counsel represented that she spoke to defendant's foster mother, who said that

defendant was "respectful" and a "rule follower" while under her care and that defendant's biological family negatively influenced him.

¶ 22     Defense counsel argued that defendant's conduct in this case "neither caused nor threatened serious physical harm to another." Defendant was convicted based on only images of guns, and no individuals were harmed. Defense counsel claimed defendant was unlikely to reoffend, noting that he had no disciplinary reports during his incarceration at Jacksonville Correctional Center. Instead, he participated in an educational program and worked as a janitor and an inmate dietary specialist. Defense counsel argued that another 14-year sentence would be inappropriate because the trial court could not consider defendant's vacated 2011 AUUW conviction this time and defendant showed positive behavior during his incarceration. Ultimately, defense counsel recommended a sentence of three years in prison.

¶ 23     In allocution, defendant stated, "If there's any possibility that you guys can show some type of form of—just consider just my reform, my conduct throughout [the Illinois Department of Corrections], and how I just took my own personal initiative to just grow, I'd truly appreciate it."

¶ 24     The trial court acknowledged that defendant was "involved in some positive things" during his incarceration. It also recognized defendant's "difficult childhood," including his involvement in the foster care system, and his daily cannabis use during his youth. Nevertheless, the court determined "[t]here's not a lot of mitigating evidence in this case." Defendant had four children, but he still committed many criminal offenses. The court reasoned, "[I]t would seem that if you are having children, you'd want to be home with them as opposed to being out committing new offenses and going to prison repeatedly during their formative years."

¶ 25     The trial court emphasized defendant's criminal record. It explained, "[T]here's not

a period of time where he has not been somewhat engaged in the justice system. He has, the best of my knowledge, never successfully completed a period of parole. He's been paroled from the Department, violates, returned, sometimes multiple times on any one offense." The court found that defendant's history "put the public at extreme risk." It added,

> "And, although counsel has indicated that there was no threat of harm in this case—he just had pictures of him holding firearms—the testimony at trial involved assertions that the defendant wanted a gun because a few weeks earlier his brother had shot him and he had talked about how retribution was inevitable. And so there is a question about this being more than just taking pictures holding firearms."

The court also referred to defendant's refusal to comply with MCDF rules.

¶ 26 The trial court concluded that a term of imprisonment was "necessary for the protection of the public." After confirming that it had considered all the appropriate factors, the court sentenced defendant to 14 years in prison and 1 year of mandatory supervised release.

¶ 27 Defendant filed a motion to reconsider, asserting that the sentence was excessive. At a hearing in August 2025, defense counsel argued the trial court unduly discounted the factors in mitigation, including defendant's foster mother's characterization of defendant. The court stated that it considered all the appropriate information and evidence and denied defendant's motion.

¶ 28 This appeal followed.

¶ 29 II. ANALYSIS

¶ 30 Defendant appeals his sentence. First, he argues the trial court improperly considered a factor inherent in his offense by considering the risks posed by firearms. Second, he argues the court abused its discretion by imposing a sentence that was manifestly disproportionate to the nature of his offense.

¶ 31                              A. Factor Inherent in the Offense

¶ 32            First, we address defendant's argument that the trial court considered an improper

factor at sentencing. "Whether the trial court relied on improper factors in fashioning a defendant's

sentence is a question of law, which we review *de novo*." *People v. Brown*, 2023 IL App (4th)

220476, ¶ 43. "There is a strong presumption that the trial court based its sentencing determination

on proper legal reasoning, and a court of review should consider the record as a whole, rather than

focusing on a few words or statements by the trial court." *People v. Canizalez-Cardena*, 2012 IL

App (4th) 110720, ¶ 22. Indeed, it is the defendant's burden "to affirmatively establish that the

sentence was based on improper considerations." *People v. Dowding*, 388 Ill. App. 3d 936, 943

(2009). If this burden is met, "[a] sentence based on improper factors will not be affirmed unless

the reviewing court can determine from the record that the weight placed on the improperly

considered aggravating factor was so insignificant that it did not lead to a greater sentence." *People

v. Heider*, 231 Ill. 2d 1, 21 (2008).

¶ 33            Defendant contends that the trial court improperly considered a factor inherent in

his offense. "Generally, a factor implicit in the offense for which the defendant has been convicted

cannot be used as an aggravating factor in sentencing for that offense." *People v. Phelps*, 211 Ill.

2d. 1, 11 (2004). "Such dual use of a single factor is often referred to as a 'double enhancement.' "

*Id.* (citing *People v. Gonzalez*, 151 Ill. 2d 79, 85 (1992)). "This double-enhancement rule is

premised on the assumption that the legislature considered the factors inherent in the offense in

determining the appropriate range of penalties for that offense." *People v. Rissley*, 165 Ill. 2d 364,

390 (1995).

¶ 34            Defendant concedes he did not raise this issue in a postsentencing motion and has

forfeited this claim. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). He asks us to review this

issue under the plain-error rule, which allows us to review a forfeited claim when either

> "(1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007) (citing *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005)).

See Ill. S. Ct. R. 615 (eff. Jan. 1, 1967). "The first step in any plain-error analysis is to determine whether a clear, obvious, or plain error has been committed." *People v. Mitok*, 2018 IL App (3d) 160743, ¶ 8.

¶ 35        Defendant argues that his offense, UPWF, is necessarily related to firearms. See 720 ILCS 5/24-1.1 (West 2020). According to defendant, the offense itself reflects the legislature's determination that felons possessing firearms present a threat to public safety. See *People v. Crawford*, 145 Ill. App. 3d 318, 321 (1986) (stating that the purpose of this statutory provision is "to protect the health and safety of the public by deterring possession of weapons by convicted felons, a class of persons that the legislature has determined presents a higher risk of danger to the public when in possession of a weapon"). Defendant insists that a sentencing court may not consider the general risks of firearms as an aggravating factor.

¶ 36        Defendant further argues the trial court here relied on this generalized risk to increase his sentence. Defendant asserts, "At resentencing, however, the trial court repeatedly emphasized the generalized dangerousness of firearms and framed the offense as posing a risk to public safety, even while acknowledging 'the absence of any recovered firearm.' " Defendant also

points to the court's statement that this case involved "more than just taking pictures holding firearms." He contends that he did not threaten anyone, publicly brandish the guns, or pose any specific threat of increased harm. According to defendant, the only threat of harm the court discussed was the generalized risk from firearms.

¶ 37    The record does not support defendant's argument. Contrary to defendant's assertion, we find no repeated references to any general dangers from firearms. The trial court determined that defendant's criminal history "put the public at extreme risk," but this risk is clearly specific to this defendant, with his many prior convictions. In stating that this case involved "more than just taking pictures holding firearms," the court discussed Adams's reference during the trial to defendant's brother shooting him and defendant's comment that "retribution was inevitable." Once again, this is not a general or abstract risk. Instead, the court discussed the specific facts of this case and the increased risk posed by this defendant, based on his history of recurring criminal activity over the previous decade and his intent to retaliate for a previous shooting.

¶ 38    Defendant has not established that the trial court relied on an improper factor. Accordingly, we find no error, and therefore no plain error.

¶ 39            B. Manifestly Disproportionate to the Nature of the Offense

¶ 40    Alternatively, defendant contends his sentence was manifestly disproportionate to the nature of his offense. The Illinois Constitution requires that a defendant's sentence be determined "according to the seriousness of the offense and with the objective of restoring [him] to useful citizenship." Ill. Const. 1970, art. I, § 11. "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). "The trial court's sentence must be based upon the particular circumstances of the case, including (1) the defendant's history, character, and

rehabilitative potential; (2) the seriousness of the offense; (3) the need to protect society; and (4) the need for punishment and deterrence." *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 102. We review the trial court's sentencing decisions for an abuse of discretion. *Id.* ¶ 104. We presume that a sentence within the statutory range is proper. *Klein*, 2022 IL App (4th) 200599, ¶ 37. "[A] sentence within statutory limits will be deemed excessive and the result of an abuse of discretion by the trial court where the sentence is greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 41        Defendant argues that his sentence of 14 years in prison, the statutory maximum, was manifestly disproportionate to the nature of the offense. Defendant emphasizes that police recovered no firearms. Instead, the State presented only images of firearms. Defendant contends that his conduct did not cause or threaten harm. He highlights the evidence of his rehabilitative potential, including his education and employment during his incarceration. According to defendant, the trial court's statement that "there's not a lot of mitigating evidence" indicates the court failed to give due consideration to the factors in mitigation.

¶ 42        Defendant further claims the trial court should not have relied on his supposed retaliatory motive. At trial, the State asked Adams on cross-examination if she told police that defendant's brother shot at him and defendant indicated that "retribution [was] inevitable." This was the only reference to defendant's violent intent. Defendant observes that no messages or communications demonstrating this intent were introduced into evidence. Defendant does not argue on appeal that Adams's statement should not have been admitted at trial. Instead, defendant argues only that the court placed undue weight on Adams's claim at sentencing.

¶ 43        Finally, defendant contends that the trial court should not have imposed the same

sentence after remand as it imposed at his first sentencing hearing. Before defendant's first appeal, the trial court sentenced defendant to 14 years in prison on two counts of UPWF. We vacated one of those convictions and his sentence. We also vacated his 2011 conviction for AUUW. Defendant claims that his criminal record on remand was less significant than the trial court believed at his initial sentencing. He adds that he demonstrated greater rehabilitative potential through his behavior at Jacksonville Correctional Center. According to defendant, in imposing the same sentence it imposed at the first sentencing hearing, the trial court demonstrated that it failed to sentence him based on the specific evidence in this case.

¶ 44 We find no abuse of discretion. First, we reject defendant's claim that the State's inability to locate an actual firearm is mitigating. The State proved beyond a reasonable doubt that defendant illegally possessed a firearm. If it had not, his conviction could not stand. See *Pruitte*, 2024 IL App (4th) 240013-U, ¶¶ 37-44. Defendant is not entitled to a lesser sentence because he successfully concealed contraband firearms from law enforcement.

¶ 45 Likewise, the trial court did not abuse its discretion in placing little weight on the factors in mitigation. "The weight to be given to any *proper* factor *** is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion." (Emphasis in original.) *Sturgeon*, 2019 IL App (4th) 170035, ¶ 104. Defendant offered as mitigating evidence that he was employed and had no documented behavioral issues during his incarceration at Jacksonville Correctional Center. However, the court found that defendant's long criminal history, his frequent parole violations, and his violation of jail rules at the MCDF were stronger evidence against defendant's prospects for rehabilitation. Indeed, based on this evidence, the court rightly concluded that defendant's history "put the public at extreme risk."

¶ 46 Furthermore, although the trial court acknowledged defendant's difficult childhood

and frequent marijuana use as mitigating factors, the court was not obligated to impose a lesser sentence if it assigned little weight to these factors. Indeed, "the court is not required to give greater weight to mitigating factors than to the seriousness of the offense, and the presence of mitigating factors neither requires a minimum sentence nor precludes a maximum sentence." *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. The court did not abuse its discretion in finding the seriousness of the offense and aggravating factors so outweighed these mitigating factors as to justify the maximum sentence.

¶ 47 We reject defendant's assertion that the trial court misvalued Adams's statement about defendant's plan to retaliate against his brother because the statement was uncorroborated. "The ordinary rules of evidence governing a trial are relaxed at the sentencing hearing." *People v. Williams*, 2018 IL App (4th) 150759, ¶ 17. "Moreover, 'a sentencing judge is given broad discretionary power to consider various sources and types of information so that he can make a sentencing determination within the parameters outlined by the legislature.' " *Id.* (quoting *People v. Williams*, 149 Ill. 2d 467, 490 (1992)). Through live, in-court testimony, Adams admitted telling the officer about defendant's statement. Defense counsel had the opportunity to cross-examine her to contest her claim about defendant's intent to retaliate against his brother. Other than highlighting Adams's motive to have defendant removed from the home, defense counsel did not question Adams about her claim. Defendant also introduced no evidence disputing his retaliatory intent. Defendant did not refute Adams's claim, and the trial court reasonably believed it.

¶ 48 Lastly, the trial court was not required to impose a lesser sentence on remand. Although defendant has fewer felony convictions than the court thought at the initial sentencing hearing, the court still could have determined that defendant's multiple prior felony convictions warranted the maximum sentence. As explained above, the court was not required to view

defendant's good behavior during his most recent incarceration as more probative than his years of criminal behavior and his consistent disregard for the rules of parole. Finally, on remand, the court still had before it evidence that defendant purchased two firearms and stated that he intended to retaliate against his brother for shooting at him. The court did not abuse its discretion in determining that these factors warranted the maximum sentence, even if it also imposed the same sentence at the previous sentencing hearing.

¶ 49 Ultimately, defendant's arguments amount to a claim that the trial court should have weighed the sentencing factors differently. "The appellate court may not substitute its judgment for that of the trial court merely because it might have weighed those factors differently." *Klein*, 2022 IL App (4th) 200599, ¶ 37. The trial court's decision was not manifestly disproportionate to the nature of the offense. We find no abuse of discretion, and we affirm defendant's sentence.

¶ 50                                III. CONCLUSION

¶ 51            For the reasons stated, we affirm defendant's sentence.

¶ 52            Affirmed.